**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| CITY OF DAYTON, | : | |
| Plaintiff, | | Case No. 3:11-cv-383 |
| vs. | : | Magistrate Judge Michael J. Newman (Consent Case) |
| | : | |
| A.R. ENVIRONMENTAL, INC., *et al.*, | | |
| Defendants. | : | |

**ORDER: (1) GRANTING PLAINTIFF'S MOTION TO DISMISS (DOC. 36); (2) DISMISSING ALL OF DEFENDANT PENLAND'S *PRO SE* COUNTERCLAIMS PLED AGAINST PLAINTIFF; AND (3) DENYING AS MOOT PLAINTIFF'S THREE OTHER MOTIONS TO DISMISS (DOCS. 9, 15, 49)**

This consent case is before the Court on a Fed. R. Civ. P. 12(b)(6) motion to dismiss filed by Plaintiff City of Dayton ("City") with respect to the counterclaims pled against the City by Defendant Alex Penland ("Penland"). Penland, who proceeds *pro se*, is now incarcerated in the Correctional Reception Center in Orient, Ohio, having recently been convicted on drug trafficking and a related weapons offense. Docs. 9, 15, 36, 49. Penland has repeatedly amended his pleadings in this case, docs. 12, 33, 41, and the City has renewed its motion to dismiss on each occasion, essentially raising the same arguments. *See* docs. 15, 36, 49.

To be clear, the Court is now ruling on the City's third motion to dismiss filed on April 5, 2012 (doc. 36). The City's two prior motions to dismiss (docs. 9, 15) became moot when Penland amended his counterclaims against the City. Accordingly, the Court **DENIES AS MOOT** Documents 9 and 15.

Additionally, the City's fourth and most recent motion to dismiss (doc. 49) is moot.  This motion was filed in response to Penland's Second Amended Third Party Complaint (doc. 41).  The City recognized that the Second Amended Third Party Complaint did not amend the counterclaims against it, but nonetheless renewed its motion to dismiss out of caution.  *See* doc. 49.  Because Document 41 did not, in fact, amend Penland's counterclaims against the City, the Court **DENIES AS MOOT** Document 49.

The Court also notes that Penland has fully responded to the City's arguments made in support of its motion to dismiss: on February 21, 2012, he filed a "motion for continuance of Plaintiff's motion to dismiss" (doc. 14); on March 27, 2012, he filed a memorandum in opposition to the City's second motion to dismiss (doc. 31); and on May 15, 2012, he filed an memorandum in opposition to the City's fourth motion to dismiss (doc. 62).  Recognizing Plaintiff's *pro se* status, his documents have each been liberally construed in his favor.  *See Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011).  Additionally, because Penland has been incarcerated during these proceedings and writes his pleadings by hand, the Court has not required him to re-write each amended pleading.  Instead, the Court has liberally construed his amended counterclaims as incorporating the earlier pleadings.

## I.  PROCEDURAL HISTORY

On October 28, 2011, the City filed this action against Defendants A.R. Environmental, Inc. ("A.R."), Alex Penland, and Unknown John and Jane Doe Employees, Officers, and Shareholders of A.R., asserting claims under the Comprehensive Environmental Response Compensation and Liability Act ("CERCLA"), as well as state law claims arising out of three contracts between the City and A.R. to perform asbestos surveys, asbestos remediation, and demolition activities on

properties located in Dayton.  Doc. 1.

In response, Penland filed an Answer, and brought multiple counterclaims against the City. Doc. 8; *see also* docs. 12, 33. The City now moves to dismiss these *pro se* counterclaims.

## II. ANALYSIS

As a preliminary matter, Penland does not have standing to represent A.R., a corporation, because he is not a licensed attorney.  *See Rowland v. California Men's Colony,* 506 U.S. 194, 217 (1993); *Gerber v. Riordan*, 649 F.3d 514, 516 (6th Cir. 2011).  Accordingly, the Court will consider only whether Penland's counterclaims survive a motion to dismiss as asserted on his own behalf.[1]

In deciding a motion to dismiss, the Court "consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief."  *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 369 (6th Cir. 2011). The Court must "'construe the complaint in the light most favorable to the plaintiff'" and "'accept all well-pleaded factual allegations as true.'"  *Ashland, Inc. v. Oppenheimer & Co.*, 648 F.3d 461, 467 (6th Cir. 2011).  As the Sixth Circuit recently explained, the standard for dismissal pursuant to Fed. R. Civ. P. 12(b)(6) has changed in light of two United States Supreme Court decisions,  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009):

> Following *Twombly* and *Iqbal*, it is well settled that "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'"  A claim is plausible on its face if the "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  Plausibility is not the same as probability, but rather "asks for more than a sheer possibility that a defendant has acted unlawfully."

*Ctr. For Bio-Ethical Reform*, 648 F.3d at 369 (citations omitted) (emphasis in original).

---

[1]A.R. was properly served through its statutory agent, *see* doc. 5, but it never filed an Answer or responsive pleading.  Therefore, upon the City's motion, the Clerk entered a default against A.R. on May 8, 2012. Doc. 52.

For purposes of the motion to dismiss, the Court will categorize Penland's counterclaims into three groups: (1) contract counterclaims; (2) discrimination counterclaims; and (3) a defamation counterclaim.[2]  These are addressed in turn.

## A. Contract Counterclaims

Penland asserts the following counterclaims arising out of the contracts between the City and A.R.: breach of contract; unjust enrichment for not paying for the work A.R. performed under the contracts; negligence in carrying out the contracts; breach of good faith and fair dealing; and discrimination in the making and enforcement of contracts in violation of 42 U.S.C. § 1981 (hereinafter "Contract Counterclaims").  Doc. 8 at PageID 112-34; doc. 12 at PageID 158-61.

Penland's Contract Counterclaims must be dismissed for lack of standing.  He has not alleged sufficient facts to demonstrate how he has standing to bring claims arising out of the contracts between the City and A.R. -- to which he was not a party.  *See id.*  Further, he has not alleged that there were other contracts entered into between the City and him personally.  *See id.*

According to his Answer, Penland was the incorporator and President of A.R.[3]  Doc. 8 at PageID 100, ¶ 2.  Neither his shareholder nor corporate officer status gives him standing to assert claims against the City based on an alleged injury to, or damages suffered by, A.R.  *Canderm Pharm., Ltd. v. Elder Pharm., Inc.*, 862 F.2d 597, 603-04 (6th Cir. 1988).  As the Sixth Circuit has explained:

---

[2]Penland also asserts a "tortious interference with business contract with City of Dayton Ohio" counterclaim. Doc. 8 at PageID 118-20.  Even a liberal construction of this counterclaim reveals that it is not brought against the City, but against some of the third party defendants.  *See id.*  Additionally, Penland brings a counterclaim titled "Final Decision and/or PolicyMaker."  *Id.* at PageID 121-22.  The Court construes that claim as part of his § 1983 claim, rather than a separate cause of action.  *See infra.*

[3]Penland denies being the primary shareholder of A.R.  Doc. 8 at PageID 100, ¶ 2.

> It is universal that where there the business or property allegedly interfered with by forbidden practices is that being done and carried on by a corporation, it is that corporation alone, and not its stockholders (few or many), officers, directors, creditors or licensors, who has a right to recovery, even though in an economic sense real harm may well be sustained as the impact of such wrongful acts bring [sic] about reduced earnings, lower salaries, bonuses, injury to general business reputation, or diminution in the value of ownership.

*Id.* (quoting *Schaffer v. Universal Rundle Corp.*, 397 F.2d 893, 896 (5th Cir. 1986)).

Rather, to have standing, Penland would need to show an injury "separate and distinct" from the injury to A.R.  *B. & V. Distrib. Co. v. Dottore Cos., LLC*, 278 F. App'x 480, 485-86 (6th Cir. 2008); *Crosby v. Beam*, 548 N.E.2d 217, 219 (Ohio 1989).  He has failed to make such a showing. Indeed, in his response to the motion to dismiss, Penland concedes his lack of standing by stating, "[a]lbeit, A.R. Environmental[,] Inc. has cognizable claims that can't be represent[ed] by Defendant Penland."  Doc. 31 at PageID 269.  Accordingly, the Court dismisses Penland's Contract Counterclaims for lack of standing.

### B.  Discrimination Counterclaims

Further, Penland brings several discrimination counterclaims against the City under civil rights statutes.  Doc. 8 at PageID 122-34; doc. 12 at PageID 160-61; doc. 33 at PageID 276-82. First, he alleges disparate treatment based on his race (African American) in violation of the Equal Protection Clause.  Second, he claims discrimination in the making and enforcement of contracts in violation of §1981.  Third, Penland claims discrimination under Title VI of the Civil Rights Act. Finally, he claims the City engaged in a conspiracy to deprive him of his right to contract and other constitutional rights in violation of 42 U.S.C. § 1985(3).  *See id.*[4]

---

[4]While he does reference all of these civil rights statutes, the discrimination counterclaims are not clearly set out in Penland's *pro se* pleadings.  Having carefully reviewed all of the allegations in Penland's *pro se* pleadings, the Court liberally construes him to be asserting the claims listed above.

## 1. Section 1983 Counterclaims

Penland's equal protection and § 1981 claims must be brought under 42 U.S.C. § 1983 -- the exclusive remedy against a municipality for violations of constitutional and federal rights. *See Thomas v. Shipka*, 818 F.2d 496, 499-504 (6th Cir. 1987), *vacated on other grounds by* 488 U.S. 1036 (1989); *Warthman v. Genoa Twp. Bd. of Trs.*, 549 F.3d 1055, 1062 (2008) (finding there is no cause of action directly under the Constitution when the claim can be brought under § 1983); *Arendale v. City of Memphis*, 519 F.3d 587, 598-99 (6th Cir. 2008) (holding that a § 1981 claim against a municipality may only be brought under § 1983).

Penland has failed to state a § 1983 claim upon which relief can be granted. The Court does not even need to consider whether Penland's allegations plausibly support violations of his rights under the Equal Protection Clause or § 1981 because he has not alleged sufficient facts to establish municipal liability under § 1983.

Municipalities are only liable under § 1983 in limited circumstances. "[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983." *Arendale*, 519 F.3d at 599 (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). In other words, the municipality *itself* must cause the constitutional violation -- it is not vicariously liable for its employees' actions. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989).

Penland alleges that he was treated differently by the City because he is African American. Penland's equal protection and § 1981 claims, however, are based on the City's alleged treatment toward A.R. (a minority-owned business), *i.e.,* he claims the City wrongfully terminated its contract

with A.R. and also required A.R. to use, in his words, a "not legitimate" subcontractor.  *See* doc. 8 at PageID 122-34; doc. 12 at PageID 160-61; doc. 33 at PageID 276-82.  To the extent that A.R., not Penland, suffered an alleged injury, he lacks standing to plead such a claim on behalf of A.R. *See infra* note 8.

The only alleged discriminatory conduct toward Penland personally was that Max Fuller (presumably, a City employee) "threatened to cut [his] legs off at the knees," and another employee, Michael Cromartie, was advised of the threat, yet took no action.  Doc. 14 at PageID 169.  Accepting as true Penland's claim -- that such a threat was made -- the City cannot be found liable under § 1983.  He has not alleged facts showing that the City maintained a policy or custom of making or condoning racially-based comments or threats.[5]  Rather, Penland seeks to hold the City liable under *respondeat superior* liability which, as stated above, is not an available theory of recovery under § 1983. *See City of Canton*, 489 U.S. at 385.[6]  Accordingly, Penland has failed to plead sufficient facts to state plausible § 1983 counterclaims against the City.[7]  *Cf. Holloway v. Brush*, 220 F.3d 767, 773 (6th Cir. 2000).

---

[5]A "municipal policy" is "a policy statement, ordinance, regulation, or decision officially adopted and promulgated." *Powers v. Hamilton Cnty. Pub. Defender Comm'n*, 501 F.3d 592, 607 (6th Cir. 2007) (quoting *Monell*, 436 U.S. at 690)).  In contrast, a custom "has not received formal approval through . . . official decisionmaking channels." *Id.*  Nonetheless, a custom must "be so permanent and well settled as to constitute a custom or usage with the force of law." *Monell*, 436 U.S. at 691.  The Court finds that Penland's contention -- that a City employee took no action when he learned of Max Fuller's threat -- is insufficient to show there was a City "custom" of ignoring such comments to establish § 1983 municipal liability.  He has not alleged any other instances of City employees making threats based on race. *Cf. Stemler v. City of Florence*, 126 F.3d 856, 865-66 (6th Cir. 1997).

[6]Moreover, a threat to violate someone's constitutional rights does not itself constitute a violation and is not actionable under 42 U.S.C. §1983. *See Emmons v. McLaughlin,* 874 F.2d 351, 353-54 (6th Cir. 1989).

[7]The Court notes that A.R. has standing to bring § 1983 claims for the deprivation of its rights. *See S. Macomb Disposal Auth. v. Washington*, 790 F.2d 500, 503 (6th Cir. 1986).  Therefore, A.R., not Penland, is the proper party to bring claims asserting equal protection and § 1981 violations of the corporation's rights.

## 2.  Title VI Counterclaim

Title VI of the Civil Rights Act of 1964 prohibits racial discrimination in any program or activity receiving federal funds.  42 U.S.C. § 2000d.  Assuming, *arguendo*, that the City receives federal funds, Penland does not state a plausible claim of discrimination under Title VI because his Title VI counterclaim is premised on the disparate treatment of A.R., not of himself.  *See* doc. 8 at PageID 122-30; doc.12 at PageID 160.   Again, the only allegation of misconduct toward Penland personally was Max Fuller's threat, which does not amount to a Title VI violation.  42 U.S.C. § 2000d only prohibits intentional discrimination.  *Alexandar v. Sandoval*, 532 U.S. 275, 280, 288-93 (2001).  His assertion of one stray comment -- without indicating how it was racially motivated -- does not plausibly state a claim of direct intentional discrimination.  *See Paasewe v. Ohio Arts Council*, 74 F. App'x 505, 507-08 (6th Cir. 2003).  Likewise, Penland does not allege sufficient facts showing discrimination through circumstantial evidence.[8]  *See id.*  Accordingly, Penland has failed to state a claim under Title VI.

## 3.  Section 1985(3) Counterclaim

Section 1985(3) creates a cause of action for conspiracy to violate civil rights.  To prevail on a § 1985(3) claim, Penland must demonstrate:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges or immunities of the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 314 (6th Cir. 2005).  "[C]onspiracy claims must

---

[8]The *McDonnell Douglas* burden-shifting framework applies in Title VI discrimination cases under which Penland would have to first state a *prima facie* case of discrimination: (1) he is a member of a protected class; (2) he was qualified to receive a benefit from the City; (3) he suffered an adverse decision; and (4) similarly situated non-protected individuals were treated more favorably.  *See Paassewe*, 74 F. App'x at 508; *see also Johnson v. City of Clarksville*, 186 F. App'x 592, 594-96 (6th Cir. 2006).  Penland has failed to state such a *prima facie* case of discrimination in his *pro se* pleadings.

be pled with some degree of specificity and . . . vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim." *Ctr. for Bio-Ethical Reform,* 477 F.3d at 832 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)).

Penland has not set forth specific allegations supporting any of the required elements for a § 1985(3) claim. *See* doc. 8 at PageID 133-34; doc. 12 at PageID 160-61. He only vaguely asserts there was a conspiracy. *See id.* Therefore, Penland's § 1985 claim should be dismissed for failure to state a claim upon which relief can be granted. *Cf. Ctr. for Bio-Ethical Reform*, 477 F.3d at 832.

## C. Defamation Counterclaim

Additionally, Penland counterclaims that the allegations in the City's Complaint -- that A.R. and he committed fraudulent acts -- were false and constitute libel *per se* and defamation. Doc. 8 at PageID 114-35; doc. 12 at PageID 161-62. This counterclaim must be dismissed for failure to state a plausible defamation claim. Under Ohio law, a statement made in a complaint is absolutely privileged if it "bears some reasonable relation to the judicial proceeding in which it appears." *Surace v. Wuliger*, 495 N.E.2d 939, 942-43 (Ohio 1986). Here, the City's alleged defamatory statements were pled in the complaint and reasonably relate to these judicial proceedings. *See* doc. 8 at PageID134-35; doc. 12 at PageID 161-62. Therefore, Defendant's defamation claim must be dismissed for failure to state a claim.[9]

---

[9]Penland also seeks a declaratory judgment of "the rights of Defendants herein," doc. 8 at PageID 135, and an injunction (as best the Court can tell, he wants the Court to order the City to pay the money allegedly owed to A.R. under the contract), *see* doc. 33 at PageID 274-76. Because the Court has concluded that Penland's underlying counterclaims are each subject to dismissal, these related requests for relief are unwarranted and must also fail. *Cf. Weiner v. Klais & Co.*, 108 F.3d 86, 92 (6th Cir. 1997); *Saha v. Ohio State Univ.*, No. 05-cv-675, 2005 U.S. Dist. LEXIS 44659, at *8-9 (S.D. Ohio Oct. 26, 2005).

### III.  CONCLUSION

In conclusion, Penland's *pro se* pleadings fail to state plausible, actionable counterclaims against the City.  He attempts to plead counterclaims on behalf of A.R., but does not have standing to do so.  Penland has also failed to allege facts from which the Court may plausibly find that the City can be found liable to him personally.

It is therefore **ORDERED** that Plaintiff's motion to dismiss (doc. 36) is **GRANTED**; and all of Defendant Penland's counterclaims against Plaintiff are **DISMISSED**.

Finally, the Court's stay on discovery pending the resolution of Plaintiff's motion to dismiss Defendant's counterclaims (doc. 19) is **LIFTED**.

**IT IS SO ORDERED.**

May 21, 2012                                                      s/ **Michael J. Newman**
                                                                       United States Magistrate Judge